IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 3525 NORTH RETA , INC, | ) | |
| ANDRIJ YARYMOVYCH, | ) | |
| IHOR RALKO, ROBERT FARNIK, | ) | |
| 2412 WEST NORTH AVENUE | ) | |
| CORPORATION, ANGELICA | ) | |
| JASTRZEBSKA, POTOMAC PARK | ) | |
| PLACE, INC., KRYSTYNA | ) | |
| LESCZYNSKY, and RALKO | ) | |
| CONSTRUCTION COMPANY, INC., | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | No. 10 C 3087 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION, as Receiver for | ) | |
| InBank, f/k/a Interstate Bank, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Named plaintiffs in this case are corporations and individuals who

borrowed or guaranteed commercial loans from InBank (f/k/a Interstate Bank).

All the loans were secured by a mortgage on real property and all included, at least

for part of the life of the loan, a variable interest rate pegged to the "Interstate

Bank Base Lending Rate" (hereinafter the "InBank Index"). Central to all of

plaintiffs' claims is the allegation that the InBank Index was based on no set

standard, but instead was set by InBank on a daily basis at its pure discretion and was not even the same for every customer on particular dates. This putative class action was filed on August 3, 2009 in the Circuit Court of Cook County with InBank named as the defendant. However, on September 4, 2009, the FDIC was appointed as the receiver of InBank and shortly thereafter transferred certain InBank assets to MB Financial Bank. The FDIC, however, agreed to retain the defense of the present action. Thereafter, plaintiffs filed their Amended Complaint naming MB as the defendant, in its capacity as the successor in interest to InBank.[1] Based on an indemnification agreement between MB and the FDIC, MB moved to substitute the FDIC as defendant and the state court granted that motion.[2] The FDIC then timely removed this case to federal court based on 12 U.S.C. § 1819(b)(2)(B).

---

[1]The original Complaint was not a class action and only concerned a single loan involving three plaintiffs. The Amended Complaint added the class allegations and additional named plaintiffs involved in four other loans.

[2]Plaintiffs question the appropriateness of completely eliminating MB from this lawsuit. Plaintiffs do not question the appropriateness of the FDIC defending against a claim for damages that occurred in the past. Plaintiffs, though, contend MB continues to collect loan payments and is presently pursuing foreclosure as regards some of the loans. Plaintiffs contend MB should remain in the case regarding any reformation of the loans, an injunction related to foreclosure proceedings, and/or continuing or future interest charges. The issue of whether MB should be in this case has not been briefed and will not be considered. Also, any claim directly against MB, which is a national bank, would have to address whether an Illinois Interest Act claim against MB is preempted. *See Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*, ___ F. Supp. 2d ___, 2010 WL 3269647 *4-7 (N.D. Ill. Aug. 18, 2010).

Presently pending is the FDIC's motion to dismiss the Amended Complaint, contending plaintiffs have not pleaded their claims of fraud with the particularity required by Fed. R. Civ. P. 9(b) and that claims otherwise fail as a matter of law or because not supported with sufficient facts to satisfy the plausibility requirement of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny. The counts of the Amended Complaint are: (I) violation of the Illinois Interest Act ("IIA"), 815 ILCS 205; (II) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505; (III) contract reformation; (IV) declaratory relief that the appropriate rate of interest for the loans is that provided for in the IIA; (V) and (VI), respectively, for preliminary and permanent injunctive relief precluding use of the present method of charging interest on the loans, staying and precluding any related foreclosure proceeding, and precluding enforcement of provisions of the related notes and mortgages, including guarantees; and (VII) common law fraud on behalf of the individual plaintiffs only.

In the Amended Complaint, plaintiffs allege the terms of each loan and generally attach copies of the related promissory notes and guaranties, and monthly loan statements from late 2008. The alleged misrepresentations generally are variations in the statements regarding interest rates contained in the loan documents themselves and monthly statements issued to plaintiffs.[3] Plaintiffs do

---

[3] In paragraphs 8(d) and 8(e) of Count VII, plaintiffs conclusorily allege that InBank fraudulently modified interest and fee terms of the loans and the principal amounts without plaintiffs' consent. To the extent these allegations are

not dispute that their loan documents adequately highlighted that the loans included a variable interest rate based on an index plus a margin.[4] Each loan charged an interest rate that was stated to be the InBank Index plus a specified percentage, for example, the InBank Index plus 1.00%. Plaintiffs' contention is that the index rate actually used was inconsistent with the terms of the loan documents. The promissory note for the initial Yarymovych Loan contained the following provision (which, except for the stated rate on the particular loan date and the amount added to the InBank Index, is the same as or substantially similar to provisions in all the other loans to the named plaintiffs that are the subject of this lawsuit[5]):

> **VARIABLE INTEREST RATE.** The interest rate on
> this Note is subject to change from time to time based

_____

distinct from the allegations that an improper interest rate was used to increase the amount of interest due and the amount rolled over into new principal amounts, plaintiffs have not pleaded the additional allegations with specificity.

[4]As is alleged in the Amended Complaint, the Yarymovych Loan was based on a variable rate when originated in August 2006 and renegotiated in 2007. Since the loan documents are central to plaintiffs' claims, additional loan documents that are not attached to the complaint but are supplied by defendant may be considered on defendant's motion to dismiss. *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010); *Sequel Capital, LLC v. Pearson*, 2010 WL 4008161 *6-7 (N.D. Ill. Oct. 13, 2010). Effective November 21, 2008, the Yarymovych Loan was modified to accrue interest at a fixed rate of 5.50% per annum. Any claim related to the Yarymovych Loan would be limited to being for past damages and possibly enjoining foreclosure based on failure to pay any improperly charged interest.

[5]For the Farnik Loan, the last provision of this paragraph also includes a maximum interest rate of 25.00%. Am. Compl. Exh. J.

on changes in an index which is the Interstate Bank Base Lending Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 9.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

Am. Compl. Exh. A at 1.

Regarding each loan at issue, it is also alleged that, at the time of the loan origination or inception, "Defendant Bank advised [the pertinent plaintiff(s)] that the 'Interstate Bank Base Lending Rate' was set at or around the U.S. Prime Rate." *Id.* ¶¶ 14(A)(i), (A)(ii), (B)(i), (C)(i), (D)(i), (E)(i). The only reasonable construction of these allegations is that this representation regarding each loan was oral. Plaintiffs also allege that, on any particular day, the InBank Index is different for different borrowers. This allegation is supported by specific allegations regarding variances in the InBank Index that purportedly were used for

named plaintiffs' loans from June through November 2008. *See id.* Exh. G1.[6]

During this time period, the U.S. Prime Rate started at 5.00% and was down to 4.00% by October 29, 2008. The loan statements for this time period that are attached to the Amended Complaint, used an InBank Index that varied from 4.00% to 8.75%. As to the 2008 loan statements, the InBank Index's variance from the U.S. Prime Rate was as little as a perfect match for each of the five Ralko loan statements to as high as 4.75% for the November Yarymovych loan statement. On the date two of the five subject loans originated in 2005 and 2006, the InBank Index stated in those loan documents matched the U.S. Prime rate. As to the three other subject loans, the U.S. Prime Rate was 0.25 points lower than the InBank Index stated in the loan documents for the date of origination. When the Yarymovych Loan was renegotiated on October 12, 2007, the InBank Index stated

---

[6]In the Amended Complaint and plaintiffs' brief, plaintiffs fail to take into account the default interest rates contained in the loan documents. An Appendix to today's ruling sets forth the InBank Index that is supported by the documents attached to the Amended Complaint and how much the InBank Index varied from the U.S. Prime Rate. Taking into account the default interest rates, there is a variance, but it is much less than the amount plaintiffs contend existed. Judicial notice is taken of the "U.S. Prime Rate," as reported by the Wall Street Journal. *See* http://www.wsjprimerate.us/wall_street_journal_prime_rate_ history.htm. *See also* http://www.wsjprimerate.us/ (defining Wall Street Journal Prime Rate).

in the loan documents was 0.50 percentage points higher than the U.S. Prime Rate at the time.[7]

The Supreme Court recently summarized the pleading standard applicable to Rule 12(b)(6) motions to dismiss for which Rule 9(b) is inapplicable.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *[Twombly,* 550 U.S.], at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557 (brackets omitted).
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555 .... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

---

[7]The InBank Index in the loan document matched exactly the U.S. Prime Rate that had been in effect until a September 18, 2007 decrease.

alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

The Seventh Circuit applies a type of sliding scale approach to plausibility. The more complex and less straightforward the case and the more costly potential discovery, the more detail that will be required to satisfy the plausibility requirement. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008); *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803-04 (7th Cir. 2008); *Stickhost v. 3-D Leasing, Inc.*, 2010 WL 3834553 *2 (C.D. Ill. Sept. 21, 2010). A putative class action generally tends toward the higher end of the scale. A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen." *Swanson*, 614 F.3d at 404. "[I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden [of stating a claim] than it was before the [Supreme Court's recent decisions." *Id.*

As to any claims sounding in fraud, plaintiffs must allege the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). This includes the "the who, what, when, where, and how: the first paragraph of any newspaper story." *Windy City Metal Fabricators & Supply, Inc. v. CIT*

*Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)); *Sequel Capital*, 2010 WL 4008161 at *6. Plaintiffs, though, need not plead evidence. *Id.* Fair notice is the most basic consideration. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994); *Obi v. Chase Home Fin., LLC*, 2010 WL 4810609 *3 (N.D. Ill. Nov. 19, 2010); *Allstate Ins. Co. v. Spine Ctrs. Inst., Inc.*, 2010 WL 4024851 *1 (N.D. Ill. Oct. 13, 2010). When the alleged misrepresentations are contained in standardized documents of a single corporate defendant, Rule 9(b) does not require that the actual author of the documents be specifically identified. *See Gilmore v. Sw. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 224 (N.D. Ill. 2001); *Spine Ctrs.*, 2010 WL 4024851 at *2; *Power v. GMAC Mortg. Corp.*, 2007 WL 723509 *3 (N.D. Ill. March 7, 2007). Also, when alleged misrepresentations are made at a specific event, it is unnecessary to provide the name of the particular corporate employee who made the statement. *See Obi*, 2010 WL 4810609 at *3. Under Rule 9(b), conditions of mind may be "alleged generally," but the complaint "must still afford a basis for believing that plaintiffs could prove scienter." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (quoting *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) (quoting *DiLeo*, 901 F.2d at 629)).

As to the Count I IIA claim, plaintiffs contend the statute and common law limit defendant's collection of interest to that provided for in the parties' contracts. Plaintiffs further contend there is no actual interest rate provided for in

the parties' contracts because there is no actual InBank Index, only a number arbitrarily set by the bank for each customer. Under these circumstances, plaintiffs contend the bank is limited to charging the 5% rate of § 2 of the IIA, 815 ILCS 205/2, which provides a rate to be charged in certain circumstances when another rate is not agreed upon or otherwise applicable.[8] Count I is not a claim based on fraud,[9] so pleading with the specificity required by Rule 9(b) is not an issue as to Count I.

---

[8] Defendant contends the IIA claim must fail because there is no interest limit placed on a commercial bank loan and therefore such loans cannot violate the usury provisions of the IIA. *See Maywood-Proviso State Bank v. Sotos*, 95 Ill. App. 3d 155, 419 N.E.2d 668, 672 (2d Dist. 1981); *Sweeney v. Citicorp Person-to-Person Fin. Ctr., Inc.*, 157 Ill. App. 3d 47, 510 N.E.2d 93 (1st Dist. 1987). This argument misconstrues plaintiffs' theory. Plaintiffs do not contend that the loans violated the IIA because the interest rates were beyond those that can be contracted for under the IIA. Instead, plaintiffs contend the loans contain no definite interest rate and therefore must instead use the rate set in § 2 of the IIA.

[9] In Count I of the Amended Complaint, plaintiffs refer to "falsely disclosed" interest rates and "false loan statements." Am. Compl. ¶¶ 25(b), 28. The theory raised by plaintiffs in response to the motion to dismiss, though, does not require that there be any false representations. In response to a motion to dismiss, a plaintiff may rely on any theory supported by the facts alleged; he or it is not bound by the characterization of the claim contained in the complaint. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, ___ F. Supp. 2d ___, 2010 WL 4260085*3 n.8 (E.D. Wis. Oct. 27, 2010); *Smith v. Dominick's Finer Foods, Inc.*, 2009 WL 2358580 *1 (N.D. Ill. July 28, 2009). Of course, in response to a motion to dismiss, a plaintiff must support any legal theory with a sufficient legal argument. *Kirksey*, 168 F.3d at 1041-42; *Mirbeau*, *supra*; *Wilson v. Sutter*, 2009 WL 3156745 *2 (N.D. Ill. Sept. 25, 2009).

The loan documents provide that the InBank Index may be set by the bank at its "sole discretion." Defendant concedes that the bank must exercise that discretion reasonably and not arbitrarily. ***Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago***, 38 F.3d 1429, 1436 (7th Cir. 1994). According to the allegations of the Amended Complaint, during the latter half of 2008, InBank charged plaintiffs interest rates based on an InBank Index that varied among customers and, except for one plaintiff loan,[10] was 0.75% to 4.75% higher than the U.S. Prime Rate, instead of being within 0.25% as had been true when all the loans originated.[11] The allegations of the Amended Complaint plausibly allege that, as to all the named plaintiffs' loans except one, InBank breached the interest provisions of the loans for one or more monthly interest charge in 2008.[12] Breaching loan provisions, however, is not the same as violating the IIA. The

---

[10]The InBank Index for the Ralko Loan matched the U.S. Prime Rate for this time period. Because all the named plaintiffs' claims are being dismissed, it is unnecessary to consider whether any claim based on the Ralko Loan fails because, as a matter of law in the alleged circumstances, the InBank Index used for this loan was not an abuse of discretion. It is also unnecessary to consider whether being within 0.75% of the U.S. Prime Rate was, as a matter of law for those loans, not an abuse of discretion.

[11]The InBank Index for the Yarymovych Loan was within 0.50% of the U.S. Prime Rate when renegotiated.

[12]The Amended Complaint contains no count for breach of contract and, in response to the motion to dismiss, plaintiffs do not contend that their cause of action could survive based on a straight breach of contract claim. Instead, plaintiffs expressly disclaim that they are bringing a breach of contract claim. Pl. Br. [18] at 11-12.

facts alleged support that the loans had discernible and enforceable interest rates. Whether the appropriate rate to be used is an InBank Index that precisely matches the U.S. Prime Rate, is within 0.25 or 0.50 points of the U.S. Prime Rate, or some other reasonable determination, the InBank Index is a sufficiently definite term to be an enforceable contract provision. *See Haroco*, 38 F.3d at 1435-36; *Carrico v. Delp*, 141 Ill. App. 3d 684, 490 N.E.2d 972, 975 (4th Dist. 1986) (provision in credit-line agreement that bank sets interest rate did not prevent agreement from being enforceable).[13] Since the loans had determinable and enforceable interest rates, plaintiffs' theory as to there being an IIA violation is without merit. Count I will be dismissed.

To the extent the Count II ICFA claim is based on InBank's deceptive conduct, Rule 9(b) applies. *Ciszewski v. Denny's Corp.*, 2010 WL 1418582 *3 (N.D. Ill. April 7, 2010); *Newman v. Apex Fin. Group, Inc.*, 2008 WL 130924 *2 (N.D. Ill. Jan. 11, 2008). If Count II can succeed solely based on InBank's conduct being "unfair," Rule 9(b) need not be satisfied. *Windy City*, 536 F.3d at 669-72. Plaintiffs' primary contention is that the interest rate used by InBank was deceptive. That contention will be considered first.

---

[13]The parties' prior course of performance may be a consideration in determining the appropriate InBank Index to use in 2008 and later. *See Kinesoft Dev. Corp. v. Softbank Holdings Inc.*, 139 F. Supp. 2d 869, 890-91 & n.9 (N.D. Ill. 2001); *Carrico*, 490 N.E.2d at 975; *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 2004 WL 2005830 *6 (N.D. Ill. Aug. 31, 2004), *aff'd*, 427 F.3d 1038 (7th Cir. 2005).

The elements of an ICFA claim are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce;" (4) defendant's conduct was a proximate cause of injury; and (5) actual damages to plaintiff. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934, 935 (7th Cir. 2010). Defendant contends plaintiffs have failed to adequately allege a material deception or unfair practice nor injury or reliance by plaintiffs.

Defendant's principal argument as to deception is that there can be no deception because the interest rate terms are fully disclosed in the loan documents. *See, e.g., Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 963-64 (2002). Again, plaintiffs do not complain that InBank failed to disclose the existence of a variable interest rate, but instead contend that InBank deceptively failed to follow the contract's interest terms. Nevertheless, it is still unclear how InBank's conduct can be characterized as deceptive. The loan documents expressly state the relationship between the InBank Index and the interest rate charged. It is further alleged that monthly statements were sent for each loan and those statements disclosed the interest rate being used each month. The InBank Index was readily determinable from those statements and could readily be compared to the U.S. Prime Rate which is also readily available.

InBank was not hiding from plaintiffs that, in late 2008, the InBank Index used for all but the Ralko Loan was at variance with the U.S. Prime Rate. InBank was not hiding that it was then using a different methodology for computing the InBank Index. At most, it was not disclosing that it used a different Index rate for various customers,[14] but that is not critical to determining whether the particular Index rate charged on a particular loan violated loan terms because unreasonable or otherwise an abuse of discretion. InBank was not hiding material information from plaintiffs. Plaintiffs do not allege a violation of the ICFA based on deceptive conduct.[15]

Plaintiffs do not have an ICFA claim based on an unfair practice. Such a claim need not be pleaded with the specificity required by Rule 9(b). ***Windy City***, 536 F.3d at 669-72. "[T]o determine unfairness . . . a defendant's conduct must: (1) violate public policy; (2) be so oppressive that the consumer has little choice but to submit; and (3) cause consumers substantial injury. A court may find unfairness even if the claim does not satisfy all three criteria. . . . [T]he injury must: (1) be substantial; (2) not be outweighed by any countervailing benefits to

---

[14]At least one plaintiff, Ralko, was a party to two loans (the Ralko and Yarymovych Loans) that were being charged interest based on different index rates.

[15]Whether this claim would also fail for not alleging sufficient reliance or injury need not be considered.

consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935; *Shelbourne*, ___ F. Supp. 2d at ___, 2010 WL 3269647 at *12.

Plaintiffs conclusorily assert that InBank's conduct "offends public policy." Pl. Br. [18] at 10. A practice offends public policy if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation. *Elder v. Coronet Ins. Co.*, 201 Ill. App. 3d 733, 558 N.E.2d 1312, 1316 (1st Dist. 1990); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 2009 WL 4679477 *1 (N.D. Ill. Dec. 1, 2009); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 *6 (N.D. Ill. May 27, 2008). Here, plaintiffs do not identify the public policy they contend is violated. The first factor is not satisfied. Plaintiffs do not contend the second factor is satisfied. As to substantial injury, plaintiffs contend they were overcharged substantial amounts of interest and that some of the mortgage loans are now in foreclosure. Plaintiffs, however, only allege overcharges for a limited period of time in 2008. It is not alleged that foreclosure could have been avoided if not for this additional interest.[16] Plaintiffs do not allege an unfair practice. Count II will be dismissed.

---

[16]The monthly loan statements show four of the loans were in arrears before the allegedly improper interest rates were used in 2008.

In Count III, plaintiffs seek reformation of their contracts to provide that the variable rates for their loans are based on the U.S. Prime Rate instead of the InBank Index. "A reformation of a contract is proper when 'at the time the [contract] was reduced to writing and executed, some agreed-upon provision was omitted or one not agreed upon was inserted either through mutual mistake or through mistake by one party and fraud by the other.'" *Luza v. JPMorgan Chase Bank, N.A.*, 2010 WL 2836705 *3 (N.D. Ill. July 15, 2010) (quoting *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 885 N.E.2d 350, 355 (1st Dist. 2008)). Plaintiffs do not allege a mutual mistake and, as previously discussed, neither is fraud adequately alleged. Moreover, as previously discussed, an interest rate based on the InBank Index is an enforceable term. Count III will be dismissed.

The declaration sought in Count IV is based on a violation of the IIA. Since no violation of the IIA is adequately alleged, Count IV will be dismissed.

Since no viable claim is alleged, the Count V and VI claims for injunctive relief will also be dismissed.

As previously discussed regarding the Count II ICFA claim, fraud is not alleged. The Count VII common law fraud claim will also be dismissed.

Plaintiffs have not moved for class certification nor otherwise shown that certification of a class is appropriate in this case, nor does defendant seek a

ruling on class certification. No class will be certified and the claims of the putative class will be dismissed without prejudice.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [5] is granted. This case will not be certified as a class action. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing named plaintiffs' individual causes of action with prejudice and the claims of the putative class without prejudice.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: JANUARY 6 , 2011

# **APPENDIX**

Yarymovych Loan


This loan originated on August 30, 2006, with a maturity date of August 30, 2007. The margin was 1.00%, with the stated initial interest rate being 9.25% based on an 8.25% InBank Index. Exh. A. As of the origination date, the U.S. Prime Rate was 8.25%, the same as the InBank Index. On October 12, 2007, the loan was renegotiated for a higher principal amount. The new maturity date was November 30, 2007. The margin remained 1.00%, with the stated initial interest rate of 9.25% based on an 8.25% InBank Index. Exh. C. As of October 12, 2007, the U.S. Prime Rate was 7.75%, 0.50% less than the InBank Index. Both promissory notes contain a default margin rate of 5.00% over the InBank Index.[17] Exh. A, C. The 2008 loan statements attached to the Amended Complaint show new maturity dates of July 30, 2008 and November 30, 2008. Exh. E-I. There is no allegation that the interest terms of the note changed for the new maturity dates and the loan statements support the non-default margin rate remained the same. Effective November 21, 2008, the loan was renegotiated based on a higher principal amount and providing for a November 30, 2009 maturity date and a fixed interest rate of 5.50%. As of 2008, payments were due on the 30th of each month. Exh. E-I. The loan statements attached to the Amended Complaint show the following:

---

[17]The default rate is not mandatory. The bank has the option of imposing it.

| Exh. | Stmt. Date | Int. Rate | Past Due | Inferred Index | U.S. Prime[18] | Diff.[19] |
|------|-----------|-----------|----------|----------------|-----------|-----------|
| E | 7-14-08 | 8.75 | Yes[20] | 7.75 (8.75-1.00) | 5.00 | 2.75 |
| F | 8-14-08 | 8.75 | No | 7.75 (8.75-1.00) | 5.00 | 2.75 |
| G | 9-13-08 | 8.75 | Yes | 7.75 (8.75-1.00) | 5.00 | 2.75 |
| H | 10-14-08 | 8.75 | Yes | 7.75 (8.75-1.00) | 4.50 | 3.25 |
| I | 11-14-08 | 13.75 | Yes | 8.75 (13.75-5.00) | 4.00 | 4.75 |

Farnik Loan

This loan originated on October 7, 2005, with a maturity date of October 7, 2006. The margin was 1.00%, with the stated initial interest rate being 8.00% based on a 7.00% InBank Index. The promissory note contains a default margin rate of 6.00% over the InBank Index. Exh. J. As of the origination date, the U.S. Prime Rate was 6.75%, .0.25% less than the InBank Index. The 2008 loan statements attached to the Amended Complaint show a new maturity date of January 15, 2007. Exh. K-N. There is no allegation that the interest terms of the note changed for the new maturity date and the loan statements support the non-default margin rate remained the same. As of 2008, payments were due on the 15th of each month. *Id.* The loan statements attached to the Amended Complaint show the following:

| Exh. | Stmt. Date | Int. Rate | Past Due | Inferred Index | U.S. Prime | Diff. |
|------|-----------|-----------|----------|----------------|-----------|-------|
| K | 6-28-08 | 13.75 | Yes | 7.75(13.75-6.00) | 5.00 | 2.75 |
| L | 7-30-08 | 13.75 | Yes | 7.75(13.75-6.00) | 5.00 | 2.75 |
| M | 9-29-08 | 13.75 | Yes | 7.75(13.75-6.00) | 5.00 | 2.75 |
| N | 10-31-08 | 13.75 | Yes | 7.75(13.75-6.00) | 4.00 | 3.75 |

---

[18]As reported by the Wall Street Journal. *See* http://www.wsjprimerate. us/wall_street_journal_prime_rate_history.htm.

[19]The difference between the Inferred InBank Index and the U.S. Prime Rate.

[20]Although the loan statements indicate the loan was past due in July, September, and October 2008, InBank apparently did not exercise its option to impose the default rate until November 2008.

Potomac Loan

This loan originated on March 14, 2006, with a maturity date of September 14, 2007. The margin was 1.25%, with the stated initial interest rate being 9.00% based on a 7.75% InBank Index. The promissory note contains a default margin rate of 6.25% over the InBank Index. Exh. O. As of the origination date, the U.S. Prime Rate was 7.50%, .0.25% less than the InBank Index. As of 2008, payments were due on the 14th of each month. Exh. Q-T. The loan statements attached to the Amended Complaint show the following:

| Exh. | Stmt. Date | Int. Rate | Past Due | Inferred Index | U.S. Prime | Diff. |
|------|-----------|-----------|----------|----------------|------------|-------|
| Q | 7-29-08 | 12.00 | Yes | 5.75(12.00-6.25) | 5.00 | 0.75 |
| R | 9-27-08 | 12.00 | Yes | 5.75(12.00-6.25) | 5.00 | 0.75 |
| S | 10-29-08 | 11.50 | Yes | 5.25(11.50-6.25) | 4.50[21] | 0.75 |
| T | 11-28-08 | 11.50 | Yes | 5.25(11.50-6.25) | 4.00 | 1.25 |

2412 W. North Loan

This loan originated on February 24, 2006, with a maturity date of February 24, 2007. The margin was 1.00%, with the stated initial interest rate being 8.75% based on a 7.75% InBank Index. The promissory note contains a default margin rate of 6.00% over the InBank Index. Exh. U. As of the origination date, the U.S. Prime Rate was 7.50%, .0.25% less than the InBank Index. As of 2008, payments were due on the 24th of each month. Exh. W-Z. The loan statements attached to the Amended Complaint show the following:

| Exh. | Stmt. Date | Int. Rate | Past Due | Inferred Index | U.S. Prime | Diff. |
|------|-----------|-----------|----------|----------------|------------|-------|
| W | 7-8-08 | 11.75 | Yes | 5.75(11.75-6.00) | 5.00 | 0.75 |
| X | 8-8-08 | 11.75 | Yes | 5.75(11.75-6.00) | 5.00 | 0.75 |
| Y | 10-8-08 | 11.75 | Yes | 5.75(11.75-6.00) | 5.00[22] | 0.75 |
| Z | 11-8-08 | 11.25 | Yes | 5.25(11.25-6.00) | 4.00 | 1.25 |

---

[21]On October 29, 2008, the U.S. Prime Rate dropped to 4.00%. This chart uses the U.S. Prime Rate in effect as of the beginning of the day.

[22]On October 8, 2008, the U.S. Prime Rate dropped to 4.50%. This chart uses the U.S. Prime Rate in effect as of the beginning of the day.

## Ralko Loan

This loan originated on May 3, 2005, with a maturity date of May 3, 2008. The margin was 1.00%, with the stated initial interest rate being 6.75% based on a 5.75% InBank Index. The promissory note contains a default margin rate of 6.00% over the InBank Index. Exh. A1. As of the origination date, the U.S. Prime Rate was 5.75%,[23] the same as the InBank Index. The 2008 loan statements attached to the Amended Complaint show a new maturity date of May 3, 2011. Exh. B1-F1. There is no allegation that the interest terms of the note changed for the new maturity date and the loan statements support the non-default margin rate remained the same. As of 2008, payments were due on the 3rd of each month. *Id.* The loan statements attached to the Amended Complaint show the following:

| Exh. | Stmt. Date | Int. Rate | Past Due | Inferred Index | U.S. Prime | Diff. |
|------|-----------|-----------|----------|----------------|-----------|-------|
| B1 | 6-17-08 | 6.00 | No | 5.00(6.00-1.00) | 5.00 | 0.00 |
| C1 | 7-18-08 | 6.00 | No | 5.00(6.00-1.00) | 5.00 | 0.00 |
| D1 | 9-17-08 | 6.00 | No | 5.00(6.00-1.00) | 5.00 | 0.00 |
| E1 | 10-18-08 | 5.50 | No | 4.50(5.50-1.00) | 4.50 | 0.00 |
| F1 | 11-17-08 | 5.00 | No | 4.00(5.00-1.00) | 4.00 | 0.00 |

---

[23]On May 3, 2005, the U.S. Prime Rate increased to 6.00%. This chart uses the U.S. Prime Rate in effect as of the beginning of the day.